## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL B. RANDOLPH, IV,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 19-CV-2231** |
| | : | |
| **JOHN WETZEL,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**ROBRENO, J.**                                                                           **JUNE      , 2019**

Plaintiff Samuel B. Randolph, IV, a prisoner currently incarcerated at SCI Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against more than fifty Defendants, the majority of whom either work at SCI Phoenix or SCI Greene, where Randolph was previously incarcerated.  Randolph seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Randolph leave to proceed *in forma pauperis*, sever his claims against certain Defendants, dismiss certain claims against other Defendants, and give him an opportunity to amend his Complaint or proceed against the remaining Defendants at this time.  Randolph also filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction, which the Court will deny without prejudice.

### I.      FACTS[1]

Randolph's claims are predominately based on allegations that he was unnecessarily force fed on several occasions and handled with excessive force on several occasions beginning

---

[1] The following facts are taken from the allegations of the Complaint.

with events that occurred at SCI Greene in 2017.[2]  Randolph names Secretary of Corrections

John Wetzel as a Defendant, apparently with regard to claims based on events at SCI Greene and

at SCI Phoenix, and he names a group of Defendants related to events at SCI Greene in 2017 and

another group of Defendants related to events at SCI Phoenix in 2019.

The Defendants named with regard to Randolph's claims arising from events at SCI

Greene ("SCI Greene Defendants") are: (1) Superintendent Gilmore; (2) Deputy DiAlesandro;

(3) Deputy Zaken; (4) Major Caro; (5) Mr. Funk; (6) Lt. Trout; (7) Dr. Denise Smyth; (8) Dr.

Lawrence Alpert; (9) CO Jordan; (10) CO Feather; (11) CO Brandt; (12) William Nicholson;

(13) Mike Hice; (14) John McAnany; (15) P.A. Ridings; (16) Five-member CERT Team from

May 5, 2017; (17) T.A. Lewis; (18) Harry Cancelmi; (19) Bruce Pokol; and (20) three Jane/John

Doe Nurses.  The Defendants named with regard to Randolph's claims arising from events at

SCI Phoenix ("SCI Phoenix Defendants") are: (1) Superintendent Ferguson; (2) Mr. T. Fauber;

(3) Dr. Weiner, Medical Director; (4) Dr. Hanicek; (5) Dr. Sarah; (6) Ms. Gene Walsh; (7)

Deputy Terra; (8) Major Terra; (9) Deputy Sorber; (10) CO Ellerbe; (11) CO Karnizan; (12) CO

McKevitts; (13) Nurse Dennis; (14) Five member CERT Team from May 7, 2019; (15) Sgt.

---

[2] Randolph's Complaint at times alludes to conduct—such as "retaliation"—that appears to concern conduct previously addressed in a prior lawsuit or at issue in a pending lawsuit.  *See Randolph v. Wetzel*, Civ. A. No. 11-3396; *Randolph v. Wetzel*, Civ. A. No. 13-4116.  However, Randolph confirms in his Complaint that the conduct at issue in the instant lawsuit is not based on the "same set of facts" as his prior lawsuits.  (Compl. at 18.)  Accordingly, the Court understands any discussions of past conduct to be provided for context only, rather than as an independent basis for a claim.  To the extent Randolph intended otherwise, his duplicative claims may be dismissed as malicious.  For more information about Randolph's prior claims, which are similar in certain respects to his claims in the instant lawsuit, *see Randolph v. Wetzel*, 987 F. Supp. 2d 605, 611 (E.D. Pa. 2013), *aff'd*, 764 F. App'x 240 (3d Cir. 2019) (per curiam).

Moyer; (16) CO Policki; (17) CO Belador; (18) CO Ms. Johnson; (19) CO Smothers; (20) Lt. Ridgely; and (21) Nurse Paul.[3]

### A. Events at SCI Greene

Randolph alleges that on May 5, 2017, Wetzel, Gilmore, DiAlesandro and Caro "all issued orders to force feed [him]." (Compl. at 8.)[4] Based on those orders, Defendants DiAlesandro, Hice, Nicolson and five unidentified "CERT members" entered Randolph's cell and informed him that he was going to be placed in a restraint chair and force fed. (*Id.*)

Randolph alleges that he is handicapped as a result of a prior assault and, accordingly, explained that he was not able to sit in a chair because of his injuries because he has been "confined to a bed and unable to walk, since 2009." (*Id.*) Randolph also informed the officers that he did not need to be force fed because he was "willing to consume nutrition" and requested a Boost nutritional drink. (*Id.*) Nicholson allegedly repeatedly denied Randolph's requests and stated, "No, it's too late for that and I told you we will fix you and teach you a lesson." Hice added that "I told you we're going to stuff your [expletive] into a restraint chair and shove this big [expletive] tube up your [expletive] nose." (*Id.*)

DiAlesandro directed that Randolph be placed in the chair and force fed. Randolph again protested on the same grounds, but DiAlesandro stated that Randolph was too late. A captain and five CERT team members entered Randolph's cell, handcuffed and shackled him, and placed

---

[3] Individuals named in the body of the Complaint but who are not clearly identified as Defendants in the caption and on page five of the Complaint will not be considered Defendants in this case. The Court has identified four such possible Defendants—"2-10 p.m shift commander on 5-5-17," (Compl. at 8,) Dr. "G," Nurse Mark, and Lt. Washington (*id.* at 10). Even if Randolph intended to bring claims against those individuals, those claims fail because he does not state how they were specifically involved in the events giving rise to his claims or otherwise describe what they did or did not do to violate his constitutional rights.

[4] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

a taser device on his chest. Randolph was taken by a gurney to an observation cell and secured to a bed. Hice raised the bed to an elevated position and Randolph began to shout because of the pain caused to his neck, back, spine, and legs. Randolph asked to "drink the liquid nutrients" instead of having them force fed to him, but his request was denied. (*Id.*)

An unidentified nurse began the force-feeding procedure by forcing a tube into Randolph's nose "and directly into [his] lungs." (*Id.*) Randolph began to choke and/or suffocate because he could not breathe. He alleges that the nurse perforated his lungs and poured the liquid directly into his lungs. (*Id.* at 9.) Randolph also alleges that the nurse allowed him to choke and gag and caused a hematoma to his arm. Randolph claims that he still suffers injuries in the form of fluid in his lungs. He alleges that he was force fed on ten additional occasions between July 7, 2017 and July 10, 2017. It is not clear which of the Defendants were involved in those subsequent incidents.

The Complaint reflects that the force-feeding occurred with the permission of court orders. Randolph, alleges that to procure those orders, Nicholson and Dr. Denise Smyth "overexaggerated [his] true condition and health by inflating several numbers/readings from tests, and making it appear as if [he] was on death's doorstep and needed immediate nutrition to prevent him from perishing," which Randolph claims was untrue. (*Id.* at 9.) Randolph alleges that the "Defendants were fully aware that [he] was <u>never</u> suicidal, and that [he] simply preferred to consume his own food, due to the Defendants constant retaliation."[5] (*Id.*)

Randolph also claims that Harry Cancelmi, who was appointed to represent Randolph in connection with the proceedings in state court, violated his due process rights by "secretly

_____

[5] The Complaint repeatedly alludes to this retaliation but does not describe it in further detail.

entering into an agreement with the Defendants, unbeknownst to [him], and against [his] interest/rights." (*Id.*) Randolph provides little additional elaboration on this alleged agreement, but claims Cancelmi was operating under a conflict of interest and should not have accepted the appointment. More information and background about the order obtained from the state court is provided in Randolph's Motion for a Temporary Restraining Order and Preliminary Injunction and supporting documents, which he filed with his Complaint.

### B. Events at SCI Phoenix

On February 19, 2019, Randolph was transferred from SCI Greene to SCI Phoenix. On that day, Superintendent Ferguson and Defendant Fauber met with him about their expectations. Ferguson stated that Gilmore called to warn her about Randolph. When Randolph attempted to speak, Ferguson cut him off and stated, "we don't play that [expletive] you do down here, so if you want anything, as far as a shower, yard, activities, etc, then you better get your [expletive] in a wheelchair." (*Id.* at 10.) Randolph explained his spinal cord, back, and leg injuries and asserted that he was not able to ambulate or utilize a wheelchair "until he receive[s] the necessary surgery." (*Id.*) It is not clear from the Complaint what surgery Randolph believes he requires.

Fauber stated that there was nothing wrong with Randolph and that "we have all of the same orders from Greene, so you'll be treated the same exact way, the minute you step out of line." Randolph asked what he meant and Fauber responded "the little food game you're playing, by refusing to accept trays." Randolph explained that he had not taken a tray at SCI Greene for about a year "due to the retaliation" and preferred to eat his own food. (*Id.*) Fauber

told Randolph that he would be put in a restraint chair if he refused to take a tray, and Ferguson confirmed that sentiment. Accordingly, Randolph alleges that he took food trays out of fear.[6]

On May 7, 2019, Lt. Ridgley, CO Karnizan, and CO McKevitts came to Randolph's cell. McKevitts allegedly stated "stand up Randolph I'll knock you the [expletive] out, I know [you're] not paralyzed." Randolph asked McKevitts to repeat what he said. After McKevitts did so, Randolph threw water on him and told him to go away and close the door. Randolph alleges that McKevitts and Karnizan then filed false misconduct reports claiming that Randolph had assaulted both of them (and possibly Ridgley) even though neither Karnizan nor Ridgley was hit with the water. Karnizan also allegedly stated "I told you I'd get your [expletive] back for suing me," which Randolph alleges is a reference to the fact that he named Karnizan as a Defendant in a lawsuit he previously filed, *Randolph v. Wetzel*, Civ. A. No. 13-4116.

On the same evening, Ridgely and five CERT team officers appeared at Randolph's cell to extract him because of the water incident. Ridgley explained that he had orders to put Randolph in a restraint chair regardless of whether Randolph complied with his orders. Ridgley then directed the CERT team members to handcuff and shackle Randolph. Randolph stated that he was not fighting or resisting and asked for a gurney due to his medical condition and allegedly to avoid causing further injuries. Ridgley radioed the request to Deputy Terra and Ferguson, but they denied it and insisted that Randolph be placed in the chair. Ridgley ordered the CERT team members to place Randolph in the chair and they did so, at which point he began yelling and screaming due to the pain caused by them forcing him into the chair.

---

[6] Randolph does not allege that anything happened to him as a result of taking the tray or eating any food on the tray.

The officers were not able to get Randolph into the chair. According to Randolph, they kept trying for twenty to thirty minutes with assistance at times from nurses who joined in. Ridgley called Deputy Terra and Ferguson and allegedly explained that it was impossible to place Randolph in the chair due to his injuries and that the efforts were causing harm to Randolph. Ridgley requested a gurney, and one was sent. Randolph was placed on the gurney, taken to a cell, and placed on the floor. He was stripped naked, then partially dressed again. He requested immediate medical attention, but none was provided and he "was ignored for weeks." (*Id.* at 12.)

On May 9, 2019, Deputy Terra visited Randolph's cell. Randolph asked Terra to send medical care because he was in pain but Terra responded, "you're getting nothing." Randolph also asked for a "legal call" and unspecified legal property, but Terra denied his requests. (*Id.* at 13.) Randolph asked Terra why he issued the earlier orders. Terra responded by asking Randolph whether he learned his lesson and stating he would do it again.

On May 13, 2019, Randolph requested access to his "stockpiled food," but his requests were denied. He claims he is "being intentionally isolated and kept on a psychiatric unit, despite [him] never having or being treated with any psych issues." (*Id.*) He claims that he is hungry, wants to eat, and is not on a hunger strike, but that he prefers to eat his own food. He also states that he is drinking fluids to stay hydrated but that several doctors are "trying to fabricate [his] exact condition to make it appear as [if he] will perish very soon," which is similar to what he alleges the doctors at SCI Greene did prior to obtaining the court order permitting them to force feed him. (*Id.*) At this point, it does not appear that officials at SCI Phoenix have sought a court order to force feed Randolph.

On May 17, 2019 Ferguson visited Randolph's cell. Randolph asked for his food, a legal call, and unspecified legal work, but Ferguson denied his requests stating "you'll get nothing in here." Randolph allegedly explained that he had upcoming deadlines, but Ferguson responded that she did not care. She also allegedly admitted to ordering the restraint chair.

### C. Randolph's Claims and Motion

Randolph asserts claims pursuant to 42 U.S.C. § 1983 for retaliation, excessive force, Eighth Amendment violations related to the conditions of his confinement, denial of access to the courts, and due process violations. He also asserts claims under the Americans with Disabilities Act. With regard to his injuries, Randolph claims that he has not received treatment for lung and throat injuries caused by the force feeding, leg injuries and nerve damage, and injuries to his spinal cord. Randolph seeks an injunction prohibiting the Defendants from force-feeding him. He also requests spinal surgery and compensatory damages in the amount of $5 million.

Randolph also filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction in which he asks for an emergency order preventing the Defendants from force-feeding him.[7] (ECF No. 4.) According to the Motion, certain Defendants at SCI Greene improperly procured what Randolph characterizes as an *ex parte* order from the state court, even though counsel had been appointed to represent him. Randolph's Declaration, which is attached to the Motion, indicates that the state court's order authorizing the force-feeding is not currently in effect, but that the court indicated that

> In the event and by motion of either party, the Court will immediately reinstate
> the Temporary Injunction without need for the emergency first step

---

[7] The Motion and attached Declaration and Memorandum refer to exhibits in support of the Motion, but it appears Randolph did not include those exhibits with his filing.

circumstances, that is upon Petition of the Plaintiff, the Court will immediately
reinstate the Temporary Injunction as it currently exists and the matter will be set
for a continued hearing to determine whether the injunction should be made
permanent.

(ECF No. 4 at 10.)  In the Memorandum attached to the Motion, Randolph also asks for "proper

medical care for his lungs and other injuries that the defendants deliberately caused."  (*Id.* at 13.)

## II.    STANDARD OF REVIEW

The Court grants Randolph leave to proceed *in forma pauperis* because it appears that he

is incapable of paying the fees to commence this civil action.[8]  As Randolph is proceeding *in*

*forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) applies, which requires the Court to dismiss a

Complaint that is frivolous, malicious, or fails to state a claim.  A complaint is frivolous if it

"lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United*

*States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to

the level of the irrational or the wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 33

(1992).  "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the

judicial process or merely repeats pending or previously litigated claims."  *Brodzki v. CBS*

*Sports*, Civ. A. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

---

[8] However, as Randolph is a prisoner, he will be obligated to pay the filing fee in installments in
accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted). As Randolph is proceeding *pro se*, the Court construes his allegations

liberally. *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

### A.  Severance of Claims Based on Events at SCI Greene

The Court will sever the claims based on events at SCI Greene from the claims based on

events at SCI Phoenix so that they may proceed in separate lawsuits. Federal Rule of Civil

Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief

is asserted against them jointly, severally, or in the alternative with respect to or arising out of

the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question

of law or fact common to all defendants will arise in the action." "For courts applying Rule 20

and related rules, 'the impulse is toward entertaining the broadest possible scope of action

consistent with fairness to the parties; joinder of claims, parties and remedies is strongly

encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine

Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and

defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL

2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims

against a single party are fine, but Claim A against Defendant 1 should not be joined with

unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their

multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*,

2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever

any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, Civ. A. No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Here, the factual allegations in the Complaint can be broken down into essentially two distinct sets of events. The first set of events occurred at SCI Greene between May and July of 2017 and relate to the SCI Greene Defendants. Randolph asserts his claims based on those events against Wetzel and the SCI Greene Defendants. The focus of those claims is the repeated force-feedings during the relevant time period, injuries Randolph sustained in connection with the force-feedings, and a failure to treat those injuries.

The second set of events occurred at SCI Phoenix beginning with Randolph's transfer on February 19, 2019 and continuing to the present. Randolph asserts his claims based on those events against Wetzel and the SCI Phoenix Defendants. The focus of those claims stems from the alleged false misconduct, the related movement of Randolph from his cell to an observation cell, and his treatment in that cell. Although Randolph believes the SCI Phoenix Defendants may force feed him in the near future, they have not yet done so.

Although the two groups of Defendants are alleged to have violated Randolph's rights in certain similar ways at the different facilities, such that there may be some overlapping questions of fact or law, those similarities are insufficient to permit joinder here. *See Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (per curiam) (affirming severance of similar claims based on conduct that occurred at different prisons where "Kokinda alleged that he was housed at the three separate institutions at separate times, and that different officials at each prison independently violated his civil rights in the same way"); *McKinney*, 2014 WL 2574414, at *16 (severing claims where plaintiff alleged that officials at two facilities

"disregarded his medical needs in a similar manner" even though "the law relating to deliberate indifference, as well as the proofs of plaintiff['] s medical conditions, might overlap as to those medical-related claims" because that did not justify joinder). Accordingly, the Court will sever the claims against Wetzel and the SCI Greene Defendants based on events at SCI Greene and direct the Clerk of Court to open a new lawsuit, which the Court will then transfer to the Western District of Pennsylvania where venue for those claims would be proper. *See* 28 U.S.C. §§ 118(c) & 1391. Additional screening of those claims will be left to the transferee court. The Court will address Randolph's claims against the SCI Phoenix Defendants below.

### B. Claims against Wetzel and SCI Phoenix Defendants Based on Events From February 19, 2019 through the Present

#### 1. ADA Claims

Randolph has not alleged a basis for a claim under the ADA. "Title II of the Americans with Disabilities Act of 1990 (ADA), which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12131 & 12132) (internal quotations omitted). Although the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."). Accordingly, Randolph's claims against Wetzel and the SCI Phoenix Defendants in their individual capacities must be dismissed.

To the extent Randolph raises his ADA claims against the Wetzel and the SCI Phoenix Defendants in their official capacities, he has not stated a plausible basis for an ADA claim. A plaintiff bringing a claim under Title II of the ADA must allege: "(1) that [he] is a qualified individual with a disability; (2) that [he] was either excluded from participation in or denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and, (3) that such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability." *Douris v. Dougherty*, 192 F. Supp. 2d 358, 368 (E.D. Pa. 2002). Randolph does not clearly or plausibly allege that he was prevented from participating in any services, programs or activities at SCI Phoenix because of any of his disabilities. Furthermore, to the extent Randolph's ADA claims are based on the adequacy of his medical care, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, Civ. A. No. 19-0859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (citing cases); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude . . . that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)). In sum, there is no plausible basis upon which Randolph's ADA claims could proceed. *See Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (per curiam) (rejecting ADA claim where inmate alleged "that the prison *ignored* his alleged disabilities in order to justify his placement in the LTSU—not that they placed him in the LTSU because of discriminatory animus based on his alleged mental disabilities.").

## 2. Section 1983 Claims

Turning to Randolph's § 1983 claims, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As the Court will discuss further below, Randolph has failed to state a claim against Wetzel and many of the SCI Phoenix Defendants named in his Complaint, and additional claims are insufficiently developed to proceed at this time.

### a. Official Capacity Claims for Damages

The Eleventh Amendment bars suits against a state and its agencies in federal court. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.[9] *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Accordingly, the Court will dismiss Randolph's damages claims against Wetzel and the SCI Phoenix Defendants in their official capacities.

### b. Failure to Allege Personal Involvement

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

---

[9] However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.* The Eleventh Amendment also does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016).

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.

Randolph has failed to specify what many of the named Defendants did or did not do during his incarceration at SCI Phoenix that violated his constitutional rights. Other than naming them as Defendants and generally implying that he intends to hold them liable for events that occurred at SCI Phoenix, Randolph has not alleged any plausible factual basis for a claim against the following Defendants: (1) Wetzel; (2) Dr. Weiner; (3) Dr. Hanicek; (4) Dr. Sarah; (5) Ms. Gene Walsh; (6) Deputy Sorber; (7) CO Ellerbee; (8) Nurse Dennis; (9) Sgt. Moyer; (10) CO Policki; (11) CO Belador; (12) CO Ms. Johnson; (13) CO Smothers; (14) Nurse Paul; and (15) Major Terra.[10] The large number of Defendants and the fact that the Randolph alleges several

---

[10] Major Terra appears to be a distinct person from Deputy Terra.

claims also confuses and complicates any understanding of his claims, including which claims can be fairly understood to be brought against each Defendant. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014). Accordingly, the Court will dismiss Randolph's claims against those fifteen Defendants.

### c. Retaliation and Due Process

Randolph indicates that he intends to raise retaliation and due process claims. The only factual basis that the Court can discern for those claims are the allegedly false misconduct reports filed by Defendants McKevitts and CO Karnizan to retaliate against Randolph for naming Karnizan in a prior lawsuit. "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002). "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (internal quotations omitted). "[F]alsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts." *Smith*, 293 F.3d at 653.

Taking Randolph's allegations as true and construing them liberally, as the Court is obligated to do at this stage of the litigation, he may proceed on his due process and retaliation claims against McKevitts and Karnizan at this time with regard to the false misconducts because he indicates that the misconducts were issued for purposes of retaliation and as it is not clear whether he received an opportunity to be heard on the allegations. To the extent Randolph

intended to raise any other due process or retaliation claims, those claims are not clearly pled and thus not plausible.

### d. Excessive Force

Randolph also raises excessive force claims under the Eighth Amendment, which the Court understands to be based on the force applied to him in the course of the cell extraction on May 7, 2019 by Ridgley and the CERT team officers at the direction of Ferguson and Deputy Terra. Force amounts to cruel an unusual punishment under the Eighth Amendment when it is applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted are relevant to that ultimate determination." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotations and citations omitted) (second alteration in original). "But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. *Id.* Randolph will be permitted to proceed on his excessive force claims at this early stage of the litigation.

### e. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

To the extent Randolph is attempting to raise claims against the SCI Phoenix Defendants for deliberate indifference to his current medical needs after he arrived at SCI Phoenix stemming from injuries he sustained in 2009 and 2017 at SCI Greene, he has failed to state a claim. Randolph indicates that he suffers from various spinal cord, back, and leg injuries, as well as injuries to his lungs, but for the most part he does not allege that any of those injuries required immediate treatment upon his arrival or during his stay at SCI Phoenix, or that the SCI Phoenix Defendants were aware of the need for that treatment. The one exception is his allegation that he

required surgery in connection with those injuries. However, it is not clear what medical care Randolph already received for his injuries, why Randolph believes surgery is required, whether surgery is medically required, and how any of the Defendants—especially those who are not doctors—could be held responsible for that medical decision. Accordingly, Randolph has not stated a claim against the SCI Phoenix Defendants for deliberate indifference to any medical needs he may have had in connection with injuries sustained before he arrived at SCI Phoenix.

The only other basis for a claim based on medical needs stemming from events at SCI Phoenix appears to be Randolph's allegation that he requested and was denied any medical treatment for pain he suffered in connection with the May 7, 2019 incident. Randolph may proceed on those claims at this time. However, as Defendant Fauber is not alleged to have been involved in any of the events that occurred in May of 2019, no deliberate indifference claims will proceed against him.

### f. Other Challenges to Conditions of Confinement

Liberally construing the Complaint, Randolph may also be challenging certain conditions at SCI Phoenix under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (citations and internal quotation marks omitted). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The factual basis for these claims appears to be Randolph's housing on the psychiatric unit and the denial of access to his stockpiled food, which he would apparently prefer to eat as opposed to the food being served to him on trays. These claims fail because Randolph's allegations do not support a plausible inference that he is being deprived of basic needs. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."). Furthermore, as this Court has previously observed with regard to Randolph, "'[a] prisoner cannot force the prison to change its rules by going on a hunger strike and blaming the prison.'" *Randolph*, 987 F. Supp. 2d at 626 (quoting *Rodriguez v. Brilley*, 403 F.3d 952, 953 (7th Cir. 2005)). The Complaint does not allege that any of the Defendants refused to provide Randolph food, only that they would not allow him to access his "stockpiled food." Accordingly, the Complaint does not support a plausible Eighth Amendment claim.

### g. Denial of Access to the Courts

Finally, Randolph asserts a claim under the First Amendment for denial of access to the courts. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Randolph's denial of access to the courts claim appears to be based on his allegations that when Terra and Ferguson visited his cell, they denied his request for a legal call and unspecified legal work. Those allegations are far too vague to state a claim. Randolph has not indicated what cases or claims he was prevented from pursuing nor explained why he required a "legal call." To the extent he refers to the Court's May 1, 2019 order in *Randolph v. Wetzel*, Civ. A. No. 13-4116 (ECF No. 47), which gave him thirty days to respond as to whether he intended to prosecute his claims in that case, a request for extension of time, rather than a denial of access to the courts claim, would have been the appropriate remedy for that situation.[11] In sum, Randolph has not alleged any plausible basis for a denial of access claim.

### C. Motion for a Temporary Restraining Order and/or Preliminary Injunction

As noted above, Randolph seeks a temporary restraining order and/or preliminary injunction prohibiting the Defendants from force-feeding him and requiring the Defendants to provide him surgery for his injuries.[12] A party seeking the "extraordinary remedy" of a temporary restraining order or preliminary injunction must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a

---

[11] See the Court's June 21, 2019, Order dismissing the earlier case but allowing Plaintiff to petition the Court to reinstate the case due to an alleged denial of access to the courts. ECF No. 48.

[12] As Randolph is no longer incarcerated at SCI Greene, his Motion is moot as to the SCI Greene Defendants to the extent he sought injunctive relief against them.

temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction.").  Randolph has not satisfied that standard.

As noted above, Randolph has failed to allege that any of the SCI Phoenix Defendants were deliberately indifferent to any serious medical needs he had as a result of injuries he sustained at SCI Greene, including any alleged need for surgery.  Additionally, although Randolph speculates that certain of the Defendants may try to force feed him in the future, that allegation is speculative.  Furthermore, even if prison officials seek to force feed Randolph in the future, they will presumably need to first obtain an order from the state court as Randolph's filings make clear that no order is currently in effect.  It is not clear why the process provided by the state court is insufficient to evaluate any proof or arguments advanced by prison officials as to the need for any such order.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Randolph leave to proceed *in forma pauperis* and sever his claims as to Wetzel and the SCI Greene Defendants based on the events that occurred at SCI Greene.  Certain of Randolph's claims against Wetzel and the SCI Phoenix Defendants will be dismissed with leave to Randolph to file an amended complaint if he chooses to do so.  If Randolph does not file an amended complaint, he may proceed on the claims that the Court did not dismiss: (1) due process and retaliation claims against McKevitts and Karnizan based on issuance of the allegedly false misconducts; (2) excessive force claims based on the force applied to him in the course of the cell extraction on May 7, 2019 by Ridgley and the CERT team officers at the direction of Ferguson and Deputy Terra; and (3) deliberate indifference to medical needs claims against Ridgley, the CERT team officers, Ferguson, and Deputy Terra in relation to Randolph's requests for medical treatment for injuries he sustained

during the cell extraction.  The Motion for a Temporary Restraining Order and Preliminary Injunction is denied without prejudice at this time.  An appropriate Order follows.

**BY THE COURT:**

_____

**EDUARDO C. ROBRENO, J.**